21063.   BODIN *et al.* v. GILL *et al.*

HAWKINS, Justice.   Mrs. Ruth Bowden Gill filed a petition on March 16, 1960, in the Superior Court of Fulton County, Georgia, against the First Christian Church, Atlanta, Georgia, Inc., Jiroud Jones, individually, and doing business as Jiroud Jones & Co., whom we will hereinafter refer to as the contractor, and Daniel H. Bodin and Willard N. Lamberson, individually, and as partners doing business under the name of Bodin & Lamberson, whom we shall refer to as the architects.

The plaintiff instituted her action against the defendants jointly and severally, alleging that she was the owner of and in possession of certain described land in DeKalb County, Georgia, on which she had a residence and upon which she had spent considerable time, money, and effort in landscaping and improving; that the defendant church was the owner of certain described land in DeKalb County, which adjoined the land of the plaintiff, in that the rear lines of both tracts abutted; that the property of the church when purchased May 10, 1957, had growing upon it trees and vegetation in a natural state, which did not cause the flow of water to concentrate and be discharged upon the plaintiff's land in an unnatural manner; that, prior to March 18, 1958, defendant architects were employed by the defendant church to prepare plans, specifications, and drawings for the erection of a church building, roadways, and parking lot on the church property; that the architects for a fee paid by the church did prepare plans and specifications, details of which were not fully known to the plaintiff, but were well within the knowledge of the defendants; that, on or about March 18, 1958, the contractor entered into a written contract with the church to perform all work required under the plans prepared by the architects; that plaintiff did not know the contents of the contract, but same were in the knowledge of defendants, who

were in possession of copies thereof; that shortly after March 18, 1958, the contractor began to erect a church building, pave roadways and parking lot, and that this construction in its various stages was supervised by the architects; that the construction conformed to the plans and specifications prepared by the architects; that the contractor, with the knowledge of and under the supervision of the architects, scraped off vegetation, moved and removed the trees, moved and removed top soil, changed the contour of the land, paved a large area thereof with a hard surface, changed the drainage, which caused dirt, mud, silt, and debris to wash down upon plaintiff's property; that the contractor, under the supervision of the architects, constructed the roof of the church building and placed gutters and downspouts thereon, so that the water falling upon the roof was directed by gutters and downspouts onto the paved parking lot, which is concentrated and discharged along with rainwater falling upon said parking lot onto plaintiff's land in greater quantities and in different places than occurred before the contour of the land was changed; that, as a result of these wrongful acts of the defendants in changing the contour of the land and causing damage in the concentration and discharge of rainwater, plaintiff has lost all of the top soil, lawn, flowers, and shrubbery, which have been washed away from her land, and mud, silt, water, and debris have washed down upon her driveway and lawn, causing irreparable damage; that, upon information and belief, in order to replace the top soil and to re-seed her lawn, she would have to expend $2,900; that, prior to the construction and changing of the contour of the defendant's land, there was no mud or silt washing upon the plaintiff's property, and very little if any, surface water; that whatever surface water there was, was dispersed over the entire rear of plaintiff's property in its natural flow.

The petition further alleged that the defendants' acts created, constituted, and do now constitute a continuing nuisance, since the damage complained of occurs from the unnatural flow of surface water upon the land of the plaintiff from the land of the defendant church every time it rains. It was alleged that, when plaintiff first noticed, shortly after construction began, that mud, silt, and debris were washing onto

her property, and that water was washing in a concentrated and unnatural flow from the land of the defendant church onto her land, she contacted the trustees of the defendant church, the architects, and the contractor, requesting that they correct this situation, and stop the unnatural flow of water and the washing of mud, silt, and debris upon her property; that she made repeated requests of the defendants during several stages of the construction to remedy the situation, and that she be compensated for her damages; that defendants told her that they wanted to complete the construction of the building, the paving of the roadways, and the parking areas, after which time they would see what could be done to alleviate the damage to her property; but that, instead of trying to divert the flow of water and refrain from washing mud, silt, and debris on her property, they have piled tree trunks and logs on the property line, and have created a reservoir to collect a portion of the surface water as it washes from the roof and parking area, but the only result is that the tree trunks and logs only concentrate and change the natural flow of water from the property of the church and discharge it in a different place upon the land of the plaintiff.

It was further alleged that defendants have notified plaintiff that the only way to alleviate the damage is to dig a ditch across her property and to lay therein a 24-inch main sewer; that to do so would be to forever give the defendant church an easement across her property, and would cost her approximately $6,000, and would give her no assurance that the water when concentrated and discharged in front of her house, on Springdale Road, through the sewer as suggested by the defendants, would not in fact lay her open to action from property owners on Springdale Road.

The petition also alleged that, on every occasion when there is rain, the concentrated and unnatural discharge of water from the land of the defendant church upon the land of the plaintiff rushes in such a stream and with such force across the plaintiff's land that the water has undermined her house, seeped into the basement, and ruined the walls and floor in the interior, making the house uninhabitable; that, in order to divert the water from rushing into the basement and undermining the structure, it will be necessary to dig ditches

to divert the flow of water, dig around the foundation and apply waterproofing materials at a cost of $2,500; that, prior to the wrongful discharging upon plaintiff's property of concentrated surface water, mud, silt, dirt, and debris, plaintiff's property was covered with beautiful shrubbery, flowers, and growing plants, was very beautiful and charming, had a fair and reasonable market value of $48,500, but as a direct result of the actions, deeds, and conduct of the defendants, the plaintiff's lawn, shrubbery, and flowers have been washed away, her basement has been flooded and ruined, and her property has been depreciated, and has a fair and reasonable market value of only $25,000; that plaintiff has no complete and adequate remedy at law, and to avoid multiplicity of actions because of the continuous nature of the wrongs which have been committed by the defendants and will continue each time it rains, equity should take jurisdiction and enjoin the defendants from continuing the wrongs alleged.

The plaintiff prayed that defendants be temporarily and permanently restrained and enjoined from allowing mud, silt, and debris to flow onto her land, and from concentrating and discharging in an unnatural manner great quantities of water onto her land; and that plaintiff have judgment against the defendants jointly, severally, and individually in the sum of $28,900.

On April 14, 1960, a general demurrer and an answer were filed by the architects. On June 10, 1960, counsel for the architects made an oral motion to dismiss the petition insofar as it sought equitable relief in the form of an injunction against them, on the ground that plaintiff's petition failed to set forth a cause of action for any such equitable relief against the architects. On August 3, 1960, this oral motion was denied. On the same day, the general demurrer was overruled, the trial judge stating in his order: "It is the opinion of the court that said architects in the preparation of their plans and specifications would necessarily take into consideration the question of the natural flow of water from defendant church's property and the plaintiff's property, and would be charged with the duty of providing in their plans and specifications for the drainage of water from said church property so as not to injure or damage plaintiff's property."

Following the interlocutory hearing, at which affidavits, photographs, and the contract between the church and the architects were introduced in evidence, the trial judge, on August 3, 1960, restrained and enjoined the church and the architects "from further discharging said water upon said plaintiff's property as aforesaid in greater volume at certain places than it was discharged upon plaintiff's property according to its natural flow. However, the effective date of the restraining order and injunction is November 1, 1960. In the meantime the defendants will use their efforts in full co-operation with plaintiff to remedy the conditions complained of, and for which said restraining order and injunction are granted. And the plaintiff and the defendants will report to this court on or before the effective date of said restraining order and injunction as to what success has been accomplished in their efforts to remedy the situation."

The exceptions are to all three of these judgments insofar as the architects are concerned.

The evidence introduced at the interlocutory hearing by affidavits and exhibits, including photographs showing a large pile of logs used to form a dam on the church's property next to the plaintiff's property, was quite voluminous. The architects themselves testified by affidavit, which we need not set out in full. Suffice it to say that their testimony alone supported some allegations of the plaintiff's petition, and included the following: "In mid-November, 1958, the church officials requested that deponents investigate the possibility of decelerating the natural flow of surface water moving from the church properties onto the plaintiff's properties. After a study of the situation, the deponents recommended to the church that a log brake be constructed at the extreme southeastern corner of the church property in order that waters moving off of the paved area would pond at that location and then seep through the log brake onto the plaintiff's property at a reduced flow rate and in a normal manner. Such a log brake was constructed by the contractor as a special addition to the contract and it has proved effective in retarding the natural rate of flow of water from the church property onto the plaintiff's property." There were affidavits by others with respect to the so-called log "brake," "dike," "dam," or "leaking dike," which indi-

cated that the conditions as alleged in the petition had not been corrected, including an affidavit of James A. Mackay, an attorney representing the next-door neighbor to the plaintiff, who testified in part: "Affiant then checked with Mr. Fitzgerald, the DeKalb County Engineer, and went to the premises with Mr. Fitzgerald and he informed me that the County would consider having the water carried from the rear of defendant's lot to Springdale Road by pipe if a specific plan were submitted and that when a proper plan were submitted it would be approved and the County would take care of the water after it reached Springdale Road. Affiant was then advised by the architect, Mr. Lamberson, that he wished to experiment with a leaky dike in an effort to solve the problem with less expense to the church. Affiant went to the premises after the dike was constructed and saw that water was still concentrated and forced upon plaintiff's property and that damage resulted." *Held:*

1. "The undertaking of an architect implies that he possesses skill and ability, including taste sufficient to enable him to perform the required services at least ordinarily and reasonably well, and that in a given case he will exercise his skill and ability, his judgment and taste, reasonably and without neglect." *Block v. Happ*, 144 Ga. 145, 146 (2) (86 S. E. 316). "The law imposes upon persons performing architectural, engineering, and other professional and skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions." *Housing Authority of City of Carrollton v. Ayers*, 211 Ga. 728, 733 (6) (88 S. E. 2d 368). One who commits a trespass upon the land of another is subject to be sued as a trespasser, whether he is acting for himself or is agent for another. "If he commits such trespass by the direction of another as his principal, both may be sued as joint wrong-doers." *Baker v. Davis*, 127 Ga. 649 (1) (57 S. E. 62). See also *Gloss v. Jacobs*, 86 Ga. App. 161, 166 (71 S. E. 2d 253); *Code* § 105-1401; 87 C. J. S. 966, § 13(c); 987, § 31(b). Under these principles of law as applied to this case, the petition stated a cause of action against the architects for some of the relief sought, and the trial judge did not

err in overruling the general demurrer of the architects. *Cox v. Martin*, 207 Ga. 442 (62 S. E. 2d 164); *Weimer v. Cauble*, 214 Ga. 634 (106 S. E. 2d 781).

2. It is contended that the trial judge erred in denying the oral motion made by the architects to dismiss the petition insofar as it seeks equitable relief in the form of an injunction against them, on the ground that the petition fails to set forth a cause of action for any such equitable relief against the architects. In their brief, counsel for the architects contend that the petition nowhere alleges that the architects improperly performed their contract of employment with the church, or that the architects breached any duty they owed to the church or anyone else in the performance of architectural services under their contract, or that the architects failed to advise or improperly advised church officials or others concerning the anticipated results of the development of the property as required by the church, and that it was not alleged that there was any privity between the plaintiff and the architects, who were independent contractors. A careful reading of the allegations of the petition, which we have set out in detail in the preceding statement of facts, refutes these contentions. The petition states a cause of action as against a motion to dismiss in the nature of a general demurrer, and it was not error to deny the motion. See, in this connection, *Rinzler v. Folsom*, 209 Ga. 549, 553 (3) (74 S. E. 2d 661); *Oostanaula Mining Co. v. Miller*, 145 Ga. 90 (1b) (88 S. E. 562); *Sweetman v. Owens*, 147 Ga. 436 (1) (94 S. E. 542); *Spencer v. Tumlin*, 155 Ga. 341 (116 S. E. 600).

3. With respect to the grant of the interlocutory injunction as against the defendant architects, it has been held that to concentrate and collect surface water and to cause it to be discharged upon the land of a lower proprietor in greater quantities at a particular locality, or in a manner different from that in which the water would be received by the lower estate if it simply ran down upon it from the upper by the law of gravitation, constitutes an actionable nuisance (*Mayor &c. of Albany v. Sikes*, 94 Ga. 30, 35, 20 S. E. 257, 26 L. R. A. 653; 47 Am. St. Rep. 132; *Lankford v. Simms*, 205 Ga. 349, 53 S. E. 2d 369), and that the continuing maintenance of such a nuisance may be enjoined by a court of equity (*Rinzler v.*

*Folsom,* 209 Ga. 549, supra) ; but the principle upon which one is charged as a continuing wrongdoer, and therefore subject to be enjoined from the maintenance of a continuing nuisance or trespass, is that he has a legal right and is under a legal duty to terminate the cause of the injury. *City Council of Augusta v. Lombard,* 101 Ga. 724, 727 (28 S. E. 994) ; *Keener v. Addis,* 61 Ga. App. 40 (5 S. E. 2d 695) ; 66 C. J. S. 838, 839, §§ 83, 85. The uncontradicted testimony is that the architects' obligations under their contract with the church were terminated on July 14, 1959, at which time the church accepted and went into exclusive possession of the property, and was in such possession of the property at the time of the interlocutory hearing. It thus appears from the evidence (but not from the allegations of the petition) that the defendant architects at the time of the filing of the petition in March, 1960, had no legal right to go upon the church property for the purpose of terminating the cause of the injury. It was therefore error to grant the interlocutory injunction against the defendant architects.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

ARGUED OCTOBER 11, 1960—DECIDED NOVEMBER 10, 1960.

*Gambrell, Harlan, Russell, Moye & Richardson, Robert R. Richardson, Edward W. Killorin,* for plaintiffs in error.

*Smith, Field, Ringel, Martin & Carr, Lewis, Lewis, Whaley & Cagle, Hugh M. Dorsey, Jr., Jule W. Felton, Jr.,* contra.