NORTH AMERICAN COMPANY FOR
LIFE AND HEALTH INSURANCE,
Plaintiff-Appellant,

v.

Merton B. BERGER et al., Defendants,

Merton B. Berger, Defendant-Appellee.

No. 79–3541.

United States Court of Appeals,
Fifth Circuit.
Unit B

June 18, 1981.

Rehearing and Rehearing En Banc
Denied Aug. 10, 1981.

Everette L. Doffermyre and Matthew H. Patton, Kilpatrick & Cody, Atlanta, Ga., for plaintiff-appellant.

Robert G. Tanner, Sidney F. Wheeler, Atlanta, Ga., for Berger.

Appeal from the United States District Court for the Northern District of Georgia.

Before KRAVITCH and THOMAS A. CLARK, Circuit Judges, and LYNNE *, District Judge.

LYNNE, District Judge:

This appeal focuses on the age-old requirement of privity of contract between the parties in an action for the negligent performance of a duty. Appellee Berger was a practicing psychiatrist in the Atlanta area from 1968 through 1977. In his capacity as psychiatric consultant to the Federal Aviation Administration he diagnosed as totally disabled approximately 154 air traffic controllers. The basis for these diagnoses was often job-related anxiety and depressive neurosis. A number of these air traffic controllers held disability income insurance policies issued by appellant North American. Berger certified his findings to North American on the appellant's claim forms after the initial determination and periodically thereafter. North American relied on these certifications in paying the claims of various air traffic controllers.

---

* Senior District Judge of the Northern District of Alabama, sitting by designation.

Because of the large number of claims, North American investigated Berger and concluded that many of his diagnoses of total disability were incorrect. It sued Berger to recover the disability benefits paid to the air traffic controllers because of his allegedly fraudulent or negligent diagnoses.

Appellant's claim against Berger for fraud is pending in the District Court. Appellant appeals from the District Court's granting of a summary judgment in Berger's favor on the negligence count and its subsequent refusal to reconsider the issue. The District Court ruled that because North American was not in privity with Dr. Berger, it could not sue him to recover for the results of his alleged negligence. Upon examination of the record and the forces motivating the privity requirement, we disagree and reverse.

The appellee claims that the District Court rightly dismissed the negligence count of North American's complaint because a doctor is not subject to malpractice liability unless the injured party is or was the doctor's patient. *Buttersworth v. Swint*, 53 Ga.App. 602, 186 S.E. 770 (1936).[1] In support of its position, appellee relies not only on cases concerning medical malpractice, but on those charging other professionals with acts of negligence. *Howard v. Dun & Bradstreet, Inc.*, 136 Ga.App. 221, 220 S.E.2d 702 (1975); *McNerland v. Barnes*, 129 Ga.App. 368, 199 S.E.2d 564 (1973); *Smith v. International Lawyers*, 35 Ga.App. 158, 132 S.E. 245 (1926). In each of these cases, the Georgia courts explicitly or implicitly refused to hold the defendant professional liable because there was no direct relationship between the injured party and the defendant.

Both *Howard* and *McNerland* concern the liability of financial experts for incorrect financial assessments of businesses in which the plaintiff subsequently invested. The *McNerland* court relied on *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), in which Judge Cardozo refused to hold an accountant liable for a negligently prepared financial statement because it would expose him "to a liability in an indeterminate amount for an indeterminate time to an indeterminate class." 174 N.E. at 444.[2] The court in *Howard* was even more protective of the defendant. It noted:

> [A]s to third parties, even those the accountant knew or should have known were relying on his audit, liability can be found only upon fraudulent conduct, and proof of mere negligence will not suffice.

220 S.E.2d at 704.

The court insulated accountants from liability to anyone except those in privity.

In support of its requirement of privity in suits against professionals for negligence, *McNerland* cited *Smith v. International Lawyers*, 35 Ga.App. 158, 132 S.E. 245 (1926). The *Smith* court refused to hold an attorney liable for negligence to anyone but his client. The appellant distinguishes *Smith* on the grounds that its privity requirement applied only to money-rule procedures under Section 4954 of the *Georgia Civil Code* (1910). *McNerland*, however, cited *Smith* for its privity theme and apparently overlooked the money-rule limitation.

While recognizing that a professional may not be held liable to an "indeterminate class" of third parties, the appellant con-

---

1. Appellant argues that because of its peculiar facts, *Buttersworth* fails to establish a sweeping privity requirement for malpractice actions. In *Buttersworth*, the superintendent of a state hospital made the offhand statement that the physical condition of one of his employees could be corrected "if she would wear an abdominal support." 53 Ga.App. at 604, 186 S.E. at 772. The employee was not his patient; he never examined her. The case is distinguishable from the instant situation because of the nature of the opinions rendered in each case. Dr. Swint made a casual remark. Dr. Berger filled out and signed appellant's certification

forms with the intent for appellant to rely on his opinion.

2. In numerous opinions prior and subsequent to *Ultramares*, the New York courts recognized that the purpose of the privity requirement was to protect an alleged tortfeasor from liability to a nameless, unforeseen class of plaintiffs. *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82 (2d Cir. 1980); *White v. Guarente*, 43 N.Y.2d 356, 361, 401 N.Y.S.2d 474, 477, 372 N.E.2d 315, 318 (1977). *See Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922).

tends that an exception to the general privity requirement applies in this case. When a "tortfeasor provides an opinion with actual or reasonable knowledge that the injured party will rely on its accuracy,"[3] he is liable for the foreseeable results.

The appellant successfully distinguishes *McNerland* and *Howard*, the accountant cases, from its own. In *McNerland*, the faulty financial statements contained specific disclaimers which should have put the plaintiff on notice that the statements had not been audited by an independent CPA. In holding for the defendant, the court emphasized the latter facts in conjunction with lack of privity. In *Howard*, the defendant Dun & Bradstreet never made a representation to the plaintiff with the knowledge that he would rely upon it. Dr. Berger certainly had no doubt as to whom he was making a representation and for what purpose.

In sharp contrast to *McNerland* and *Howard*, appellant cites *Alexander Hamilton Life Insurance Company v. Trust Co. Bank*, No. C76–893–A (N.D.Ga., July 29, 1979), in which the absence of privity failed to insulate an architect from liability to an insurance company. As a preface to its opinion, the court stated: "Although there are still many unsettled questions as to the situations in which a party not in privity of contract may sue for negligence, it is clear that in a large and increasing number of instances such suits are allowed." *Id.* at 9.[4] The architect in *Alexander Hamilton* erroneously certified to an insurance company the completion of a hotel. In reliance on the architect's certification, the insurance company purchased a construction loan from the construction lender. Upon default by the borrower, the insurance company foreclosed and sued the architect. The architect relied on *McNerland* and *Howard*, emphasizing the similar lack of privity in his own case. In response, the court cited *Bodin v. Gill*, 216 Ga. 467, 117 S.E.2d 325 (1960), in which an architect's design of a church caused water damage to the property of a neighboring landowner. In spite of the absence of privity, the landowner recovered for the architect's negligence.[5] The Supreme Court of Georgia recognized in *Bodin* that:

> [T]he law imposes upon persons performing architectural, engineering, and other professional and skilled services an obligation to exercise a reasonable degree of care, skill and ability, which generally is taken and considered to be such a degree of care and skill as, under the circumstances, is ordinarily employed by their respective professions.

*Id.* at 472, 117 S.E.2d at 330.

The court thus identified a legal duty of care independent of privity.

The factual similarities between *Alexander Hamilton* and the instant case are striking. The plaintiffs are both insur-

---

**3.** *North American Company for Life and Health Ins. v. Berger*, No. C–77–119–A (N.D. Ga., June 25, 1979) (order granting summary judgment).

**4.** The court in *Alexander Hamilton* emphasized that the decision to allow a person not in privity with the defendant to sue was largely a policy matter. In *United States v. Rogers & Rogers*, 161 F.Supp. 132, 135 (S.D.Cal.1958), the court listed various factors which should play a part in the decision:

> "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of the harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (citations omitted)

*Alexander Hamilton* at 10.

**5.** Two other significant Georgia cases rely upon *Bodin*. In *Covil v. Robert & Co. Assocs.*, 112 Ga.App. 163, 144 S.E.2d 450 (1965), the court allowed landowners to maintain an action against an architectural and engineering firm that designed a nearby water pumping station that caused plaintiffs' property to flood. In *Dresco Mech. Contrs., Inc. v. Todd—CEA*, 531 F.2d 1292 (5th Cir. 1976), although the plaintiff did not prevail on the merits of the case, the court applied Georgia law and found that the defendant engineer owed a duty imposed by law to a co-defendant manufacturer with whom he was not in privity. The manufacturer had filed a third-party complaint against the engineer, accusing him of negligently designing a heating plant which the manufacturer was under contract to build.

ance companies that relied on certifications made by professionals before they took certain financial action. In *Alexander Hamilton*, the architect certified completion directly to the plaintiff. In the instant case, Berger, using the plaintiff's forms, certified disability directly to the insurance company. The relationship approaches that of privity.[6] At the very least, the relationship was so close that Berger knew exactly who would rely on his certification and for what purpose.[7] Berger was under a duty to exercise reasonable care in performing medical services, making diagnoses, and transmitting them to appellant. Summary judgment on the issue of negligence was improper for this reason, and because it is apparent that genuine issues of fact remain to be resolved. Our resolution of the issue of privity makes a consideration of appellant's third-party-beneficiary argument unnecessary.

REVERSED AND REMANDED.

THOMAS A. CLARK, Circuit Judge, dissenting:

In dissenting I have two non-reasons and two reasons. The non-reasons are the lack of precedent and my view that we should certify this case to the Supreme Court of Georgia. A decision can be made without the aid of precedent when there is none. However, when our certification rule permits Georgia's highest court to settle the issue, I look with disfavor upon establishing a precedent for Georgia federal courts in a diversity case when it is obvious that the decision will spawn many progeny.

The two reasons for dissenting are: (1) the complaint does not seek the relief granted by the decision and opinion of the majority; and, (2) the law of negligence and the relationship of the parties give no basis in reason or logic for imposing this liability on a doctor.

Turning to the complaint, it is my conclusion that in its complaint the appellant failed to state a claim against Dr. Berger for simple negligence or medical malpractice. If anything, North American's complaint states a claim against Dr. Berger for the intentional tort of fraudulent misrepresentation. North American in its complaint alleges that Dr. Berger is a psychia-

---

**6.** Appellant argues that doctors qualify as "other professionals" under the *Bodin* rationale, especially in light of Ga.Code § 84–924, which states:

> A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had.

Appellant emphasizes the language "any injury" in the statute. While appellant's reading of the statute, *i. e.*, that it confers a right to sue *for monetary injury upon a third party*, is rather ingenious, it is not persuasive. More compelling is appellee's analysis of the statute's history. Its first codification was in 1863 under the article entitled "Physical Injury." It is possible, however, to read the "other professionals" language in *Bodin* to include doctors without resorting to the Georgia statute.

**7.** Appellant cites Section 552 of the Restatement (Second) of Torts as further support for the argument that Dr. Berger had a duty to North American. That section states:

> (1) One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary in-

terest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

The facts of this case fit very neatly into this section of the Restatement. Appellee points out, however, that every illustration following the section concerns commercial transactions. Appellant retorts that the filling out of insurance disability forms and the payment of insurance proceeds are commercial transactions. We agree with appellant.

trist who disagreed with the FAA's treatment of its air traffic controllers and their emotional problems. He is charged with conspiring with the controllers to cause them to fail to report for work on the basis of a nervous condition and then diagnose them as disabled because of their working conditions and resulting nervousness. The complaint goes on to allege that Dr. Berger's wife is a lawyer with an office next to Dr. Berger's. She is said to handle some of the legal problems of the air traffic controllers, including their claims for workmen's compensation and private insurance disability benefits. One comes away from the complaint with the reaction that North American is accusing Dr. Berger of having a feud with the FAA and profiting from his fees charged the air traffic controllers. The complaint supports a claim for fraud, for intentional misrepresentation, for gross negligence—it does not support a claim for simple negligence. At no place in the complaint is there a count averring simple negligence in the manner suggested by Form 9 in the Appendix attached to the Federal Rules of Civil Procedure. The appeal does not come to us on a motion to dismiss, but on the district court's grant of Dr. Berger's motion for summary judgment on the issue of his negligence vel non vis a vis North American. Intuitively, one realizes that this motion was advanced by Berger's malpractice insurance carrier so its role in the litigation could be determined. Since I find that neither the allegations nor the affidavits against Berger establish a claim for simple negligence, I would affirm.

Even if the allegations were sufficient, I would affirm. The majority relies primarily on Georgia cases which hold architects liable to third parties. Of course, it is logical to hold architects liable for injury to the public or an adjoining landowner when such injury is the direct result of negligent design by the architect of a structure. That is simple tort law of one party owing reasonable care to another party and extending privity to those who foreseeably might be injured if such care is not taken.

The majority opinion permits every doctor to become potentially liable for payments made by an insurance company to its policyholder, the doctor's patient, whenever the doctor completes a form describing the patient's condition, and the doctor has made a mistake in diagnosing the condition. This act of the doctor is done at the request of the company and is done without consideration. The majority opinion imposes a duty on doctors neither foreseeable nor contemplated by the parties or their relationship.

Insurance companies insure persons against such risks as death and disability. It is common knowledge that they pay doctors to conduct examinations when issuing such policies. The policies, in case of a disability claim, require the policyholder to submit to an examination at the request of the company by a doctor hired by the company. Obviously, if a doctor employed by an insurance company misses a diagnosis which results in unwarranted liability of the company, the doctor may be liable to the company for his negligent performance of the contract.

The majority opinion creates privity without any just cause or reason. In the disability policy the insured individual authorizes the insurance company to secure information from any doctor treating him or her in the event of a claim for disability. The company, upon receiving a claim, conducts an investigation of the alleged disability by sending a medical form to doctors treating the claimant, as Berger in this case, by writing the policyholder's employer, by conducting surveillance, by interviewing neighbors, and by seeking other relevant information. Anyone furnishing information to the company does so gratuitously for the purpose of assisting the company in its assessment of the claim for disability benefits. None of these persons, including a doctor, such as Berger here, is required to cooperate. Most doctors do accommodate their patients by giving the insurance company the same information furnished the patient.

The doctor has a duty to the patient to make a correct diagnosis of his illness, if he has one. Doctors, being human, sometimes err. When they do, they are legally liable

**310**

to the patient for any damages sustained by the patient as the result of the negligence. The employment contract and the relationship create the duty to be careful.

Here our court creates a potential financial liability when there is no contract and no relationship other than a gratuitous one, when the doctor, at the request of the company, puts in writing information about the patient's condition as he sees it.[1] If the doctor knowingly furnishes false information, he may be held liable. If one lies to another, knowing the other will act to his detriment based on the lie, responsibility for such an intentional misrepresentation under certain circumstances may ensue. Furnishing information derived through error, innocently and gratuitously, does not create such a responsibility. Thus, I dissent.

---

1. Does the majority opinion permit a disability insurance company to recover from the claimant's employer or neighbor who furnishes erroneous information supportive of the claim but negligently arrived at?