**R.H. MACY & CO., INC., d/b/a Davison's, Plaintiff,**

**v.**

**WILLIAMS TILE & TERRAZZO COMPANY, INC., Defendant and Third-Party Plaintiff,**

**v.**

**W.D. VIRTUE COMPANY, INC., Defendant and Third-Party Defendant,**

**v.**

**COPELAND, NOVAK & ISRAEL, Third-Party Defendant and Fourth-Party Plaintiff,**

**v.**

**CUSTOM TILE COMPANY, Fourth-Party Defendant.**

**Civ. A. No. C79–1998A.**

United States District Court, N.D. Georgia, Atlanta Division.

March 29, 1984.

Ronald L. Reid, Nill V. Toulme, Ben S. Williams, Atlanta, Ga., for Copeland, Novak & Israel.

Edward L. Savell, Atlanta, Ga., for Williams Tile & Terrazzo Co. and W.D. Virtue Co.

ORDER OF COURT

HORACE T. WARD, District Judge.

This action arose out of a series of events involving the renovation of the Davison's Lenox store. The case specifically concerns the selection and installation of defective ceramic tile. Copeland, Novak & Israel ("CNI"), an architectural firm, en-

tered a contract with Davison's to design the renovation. Davison's contracted independently with Williams Tile & Terrazzo Company ("Williams") to install the tile. CNI designated "Virtue Summer Wheat 102" as the tile to be used, based upon past experience with the tile at other locations. Williams, in turn, ordered the tile from W.D. Virtue Company ("Virtue"). With knowledge only of the color and finish chosen by CNI, Virtue ordered the tile directly from a manufacturer, Custom Tile Company ("Custom Tile"). The tile turned out to be defective.

Davison's initially filed suit against Williams on its installation contract, in which Williams guaranteed the quality of the tile.[1] Williams then filed third-party complaints against Virtue for furnishing defective tile and against CNI for negligent selection of tile. Virtue filed a fourth-party complaint against Custom Tile and a cross claim against CNI alleging negligence for failure to have the tile tested. Davison's added Virtue as a party defendant.

In February of 1982 several claims were dismissed pursuant to a "Covenant Not to Sue and Assignment." CNI declined to enter the agreement. Davison's dismissed its claims against Williams and Virtue, and Williams dismissed its third-party complaint against Virtue. Still pending are Williams' third-party complaint against CNI and Virtue's cross-claim against CNI, as well as the claims against Custom Tile and its various counterclaims and cross-claims.

Currently before the court is the motion of CNI for summary judgment against both Virtue and Williams, originally filed on May 20, 1981. CNI contends that it owed no duty to either Williams or Virtue and that contribution and/or indemnity are unavailable under these circumstances. In November of 1983 CNI renewed its motion against Virtue; its defenses against Williams' third-party complaint were supplemented in September of 1983. Also before the court is CNI's motion to file depositions in support of its motions, which is unopposed and is hereby GRANTED.

## FACTS

The relevant facts of this case are relatively simple and substantially undisputed. CNI, a New York firm, had done previous interior design work for Macy's in the northeast before contracting with Davison's for the Lenox renovation. David Leitner, a CNI employee, was the decorator assigned to the Davison's job and had also worked for Macy's on a Bamberger store in Toms River, New Jersey. Leitner had selected a tile supplied by Virtue for use at the Toms River store, and apparently sought to use the same tile on the Davison's project. It is not clear whether Davison's requested that the same tile be used or whether CNI recommended it based on its successful use at the Toms River store.

Virtue was given a request for a specific color tile with a non-abrasive surface (tile similar to that used at Toms River). Virtue sent samples of tile to CNI which were labelled "W.D. Virtue Summer Wheat 102." The tile used as a color guide by CNI and Davison's (used at Toms River) had been manufactured by Maybrick Manufacturing Company, but by the time the selection was made by CNI for the Davison's project it was no longer manufactured by Maybrick. Virtue ordered the tile from Custom Tile Company.

Before installation began, Virtue apparently did inquire as to the quality of the tile and questioned Custom Tile by letter regarding "specifications." There is no indication that any assurances of compliance were given.

CNI contends it did not know who manu-

---

1. Williams was required to guarantee the tile under its agreement with Macy's, but did not make an independent investigation into its quality. They obtained a qualified warranty from Virtue. Williams visually examined a tile sample but relied on the selection by CNI, assuming they would have recourse against the manufacturer and/or the distributor if there was a problem.

factured the tile.[2] CNI did not request and did not test the samples before deciding to use the tile. It appears that CNI assumed it was dealing with a product it had previously used and with which it was satisfied.

Shortly after installation began, problems with the tile surfaced.[3] CNI did not recommend testing of the remaining tile nor did it conduct any tests before proceeding with the installation.

Virtue and Williams both contend that CNI was responsible to ensure that materials used complied with national codes and standards. They claim that CNI was negligent for failing to provide specifications or to investigate the tile before making a final selection, and for not inspecting or testing the tile. It is argued that CNI knew or should have known that the tile was unsuited to the purpose for which it was selected and that CNI failed to exercise the degree of care required of professionals under the same or similar conditions.

The alleged negligence of CNI purportedly contributed to the damages sustained by the plaintiff; both Virtue and Williams seek to recover from CNI based upon their theory that CNI owed them a duty as well and should share the responsibility for damages. CNI contends that its only duty was to its client (Davison's), that there is no privity of contract between itself and the other parties, and that therefore a tort claim is precluded. The company argues that Williams and Virtue, who handled the tile directly, had the opportunity to test it and should have done so. They assert that they did not actually select the defective tile, since Virtue switched manufacturers, and that there was no reason for them to test tile which they assumed was identical to that used at Toms River.

CNI also contends that it cannot be liable for contribution unless it committed a tort against Davison's, which it argues is impossible since their relationship was contractual. CNI further argues that the claims against it are precluded by Rule 14 because they did not arise out of the plaintiff's original claim.

## ISSUES

There are three central issues to be addressed by the court, which are:

1) Did CNI owe a legal duty of care to Virtue and/or Williams despite the absence of privity?

2) If so, was this duty breached?

3) Is the third-party complaint or cross-claim a proper mechanism for stating a claim against CNI in this case?

## DISCUSSION

The threshold issue raised by CNI in its summary judgment motion is not easily identified or resolved. The parties have misdirected some of their arguments toward the question of when a negligence action may be sustained between parties to a contract in a breach of contract case, which is *not* the question before the court. That issue is addressed in cases such as *E & M Construction Company, Inc. v. Bob*, 115 Ga.App. 127, 153 S.E.2d 641 (1967); *Orkin Exterminating Co., Inc. v. Stevens*, 130 Ga.App. 363, 203 S.E.2d 587 (1973); *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 217 S.E.2d 602 (1975). These cases all involve disputes between parties in privity.

CNI is not in privity with Williams or Virtue. Under *Ga.Code Ann.* § 51-1-11(a),[4] the right of action in tort is confined

---

**2.** Virtue employees have stated that the information was supplied to CNI.

**3.** Edges on some tiles were found to be deteriorating. A meeting was held on April 6, 1978 to discuss the problem. Mr. Bruce R. Richmond, of Virtue Tile, reported that the first shipment of tile was defective but that according to the manufacturer the problem had been corrected and the second shipment was fine.

**4.** *Ga.Code Ann.* § 51-1-11(a) provides:

Except as otherwise provided in this Code section, no privity is necessary to support a tort action; but, if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract ...

to parties to (and those in privity to) a contract if such tort arises out of a duty which is the consequence of the contract. The contractual relationships in this case were between CNI and Davison's, Williams and Davison's, and Williams and Virtue. The "duty" allegedly owed by CNI, if it exists, would arise out of its contract with Davison's. Therefore, there could be no right of action between CNI and Williams or Virtue because there is no privity of contract between them, unless the exception applies. O.C.G.A. § 51–1–11 also provides that where the party would have a right of action for the injury done independently of the contract an action in tort may be sustainable.

Thus, the question here becomes whether CNI owed a duty of care to Williams and/or Virtue such that an action for negligence will lie. None of the parties have cited any authority directly applicable to the facts of this case, but some court decisions do provide guidance. The cases most relevant to this issue concern the duty of care owed by professionals to third parties with whom they have no "professional relationship." These decisions are factually distinguishable from each other and from the present case. To complicate matters further, there is substantial conflict among them.

It is clear that the Georgia courts recognize the existence of a duty of care owed by professionals, even in the absence of privity. In *Bodin v. Gill*, 216 Ga. 467, 117 S.E.2d 325 (1960) a landowner was allowed to recover for the negligence of an architect who was employed by a church to design its building and landscaping on the property adjoining hers. In recognizing a legal duty of care despite the absence of privity, the court held:

"The undertaking of an architect implies that he possesses skill and ability, including taste sufficient to enable him to perform the required services at least ordinarily and reasonably well, and that in a given case he will exercise his skill and ability, his judgment and taste, reasonably and without neglect." *Block v.*

*Happ*, 144 Ga. 145, 146(2) (86 S.E. 316). "The law imposes upon persons performing architectural, engineering, and other professional and skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions." *Housing Authority of City of Carrollton v. Ayers*, 211 Ga. 728, 733(6) (88 S.E.2d 368).

216 Ga. at 472, 117 S.E.2d 325.

The Georgia courts have also *refused* to hold professionals liable where there was no direct relationship between the injured party and the defendant. In both *MacNerland v. Barnes*, 129 Ga.App. 367, 368, 199 S.E.2d 564 (1973) and *Howard v. Dun & Bradstreet, Inc.*, 136 Ga.App. 221, 220 S.E.2d 702 (1975), the Court of Appeals refused to hold accountants liable to third parties for incorrect audits upon which plaintiffs relied. In *Smith v. International Lawyers*, 35 Ga.App. 158, 132 S.E. 245 (1926) the Court refused to hold an attorney liable for negligence to anyone but his client. All of these cases held that the professionals were not liable to those not in privity.

None of these Georgia decisions are directly applicable to the facts of the present case. Only *Bodin* refers specifically to architects' liability, but it is easily distinguishable from the case *sub judice*. In *Bodin* the architects' work caused substantial and direct property damage to plaintiff. In this case the alleged negligence of CNI caused direct damage only to Davison's, for which Williams and Virtue have compensated Davison's and for which they seek contribution from CNI. The present case is obviously dissimilar to the accountant and lawyer cases as well.

Several federal decisions shed some light on the issue before the court. In *North American Company for Life and Health Insurance v. Berger*, 648 F.2d 305 (5th Cir. Unit B 1981) the Fifth Circuit held that a psychiatrist not in privity with an insurance

carrier owed a duty of care to the carrier and was liable for negligence in assessing the disability of air traffic controllers. The real question in *Berger* was whether a professional is liable to third parties when he or she provides an opinion with the knowledge that it might reasonably be relied upon. In holding that liability does exist, the court relied upon *Bodin, supra,* and a district court decision involving the liability of an architect to an insurance company for the erroneous certification of the completion of a hotel. *Alexander Hamilton Life Insurance Company v. Trust Co. Bank,* No. C76–893A (N.D.Ga., July 29, 1979).

The facts in *Berger* and *Hamilton* were similar. Both involved certifications (professional opinions) rendered by the defendants *directly* to the insurance companies who lost money by relying on their opinions. Because of the close relationships between the parties (who were not in privity) the courts found that a duty of care existed.

In a footnote to the *Berger* decision the Fifth Circuit noted that the issue is largely a matter of policy. 648 F.2d at 307, n. 4. The Court quoted *Hamilton,* which listed factors to consider in deciding whether to allow a party not in privity to sue for negligence:

> ... the extent to which the transaction was intended to affect the plaintiff, the foreseeability of the harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. (citations omitted).

*Alexander Hamilton* at 10.

*Berger* and *Hamilton* involve an exception to the privity requirement where a *professional opinion* is provided directly to a third party who has reason to rely

thereon.[5] In the present case CNI had no direct dealings with Williams or Virtue, did not make any representations to them concerning the tile, and issued no opinion upon which Williams or Virtue were entitled to rely. The allegation that they did rely upon CNI to determine the suitability of the tile is based upon neither a contract nor a commitment, but merely upon their own assumptions regarding CNI's responsibilities. A further distinction is that *Berger* and *Hamilton* involve acts, while this case involves an alleged omission. In *Berger* and *Hamilton* the relationships of the parties approached that of privity. 648 F.2d at 308. Such is not the case here.

The court has examined another Fifth Circuit case which bears upon this issue. In *Dresco Mechanical Contractors, Inc. v. Todd–CEA,* 531 F.2d 1292 (5th Cir.1976) a construction firm (Dresco) sued a subcontractor (Todd) after a boiler exploded during construction of a heating plant. The basis of Dresco's claim against Todd was negligent design. Todd, in turn, sued the project's consultant (Austin) based upon the theory that they were joint tortfeasors and that Austin was actively negligent. Todd and Austin had been hired by the University of Georgia (who had also hired Dresco).

The court's analysis of the question of whether Austin owed a duty to Todd focused upon the professional duty cases such as *Bodin.* The Court found that Austin, as an engineering firm, owed a duty *to those with whom it dealt.* 531 F.2d at 1295. The Court went on to hold that the evidence was insufficient to show that the professional standard was violated by Austin.

A critical difference between *Dresco* and this case is that Austin directly reviewed Todd's design plans for the facility and specified that a particular timer system be used. Austin was hired specifically for the

---

**5.** In a more recent case involving facts similar to *Berger* and *Hamilton,* the district court found that a professional duty attaches in some situations even where a certification was not made directly to the third party. *First Financial Sav-ings and Loan Ass'n v. Title Insurance Co. of Minnesota,* 557 F.Supp. 654, 659 (N.D.Ga.1982). This case is distinguishable from the case at bar on the same basis as *Berger* and *Hamilton.*

purpose of reviewing Todd's designs. The Court did not even address the lack of privity issue, presumably because of the obvious collaborative relationship between the parties which could be considered to "approach privity." There is no evidence of such a relationship between the parties in this case.

Finally, the Court relies on the case of *Kaiser Aluminum and Chemical Corporation v. Ingersoll-Rand Company,* 519 F.Supp. 60 (S.D.Ga.1981). That case involved the breakdown of an air compressor train, part of a fertilizer production facility. Kaiser, the owner-operator of the plant, sued both Weatherly (who contracted with Kaiser to build the plant) and Ingersoll-Rand (a manufacturer who supplied the air compressor train to Weatherly).[6] One of the many issues addressed by the court was whether Kaiser could assert a negligence claim based upon violation of professional duty against Ingersoll-Rand and/or Weatherly. It is the claim against Ingersoll-Rand, with whom Kaiser had no contract, that is of interest here.

The Court found that since there was no contract between Kaiser and Ingersoll-Rand, there was no professional duty. If any professional duty was owed by Ingersoll-Rand it was to Weatherly, who was its client. [Similarly, if CNI owed any duty, it was to Davison's (its client)]. The Court cited the Georgia cases of *Howard, MacNerland,* and *Smith, supra,* and stated that:

> It is settled in Georgia law that a third-party not in privity cannot rely on a professional duty which might give rise to a negligence action had the injured party been in privity ... In other professional relationship cases involving attorney/client relationship, *actual participation in that relationship* was a prerequisite to a negligence action (citing *Smith*) ... In conclusion because Kaiser had no relationship with Ingersoll-Rand from which a professional duty could arise, no negligence action for vio-

lation of professional duties will lie (emphasis added).

519 F.Supp. at 70.

The key to the decision in *Kaiser* was the absence of any professional relationship between Kaiser and Ingersoll-Rand. The Court did not attempt to reconcile the *Bodin* line of cases or *Dresco,* and did not have the benefit of *Berger,* which was decided three months later. It is this court's view that those decisions could easily be distinguished from *Kaiser* and that *Kaiser* is still good law.

After thorough review of the record and careful consideration of the law, the court concludes that neither Virtue nor Williams has a viable claim against CNI for negligence. CNI owed no duty of care to Williams or Virtue as a professional, since there is no indication that any type of professional relationship existed between them *or* that their relationship "approaches that of privity." *See Berger, supra.* There is no evidence that CNI was engaged by Davison's to examine the plans for tile installation or to supervise the companies involved in tile installation, as was the case in *Dresco.* Finally, this is not a case of negligent architectural design resulting in property damage to an owner or adjacent landowner as in the *Bodin* line of cases. This conclusion renders it unnecessary to address CNI's second argument in support of its motion for summary judgment.

## CONCLUSION

The court hereby GRANTS CNI's motion for summary judgment against both Williams and Virtue. The parties are DIRECTED to advise the court as to the status of the claims by and against Custom Tile Company within fifteen (15) days from the date of this order. It is the court's understanding that these are now the only claims remaining in this case. The unopposed motion of CNI to file depositions is GRANTED.

---

6. Weatherly and Ingersoll-Rand entered a contract for purchase and sale of the compressor. The two companies often worked together on similar projects.