**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A1512. BORD, et al. v. HILLMAN, et al.

RAY, Judge.

Anna Bord and Victor M. Bondar ("Bord and Bondar") appeal from the trial court's order granting Amy L. Hillman and Daniel A. Hillman's ("Hillmans") motion for partial summary judgment as to counterclaims related to harm allegedly caused by a retaining wall separating Bord and Bondar's property from the Hillmans's property. For the reasons that follow, we reverse.

> When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably to the party opposing the motion. Further, any doubts on the existence of a genuine issue of material fact are resolved against the movant for summary judgment. When this Court reviews the grant or

denial of a motion for summary judgment, it conducts a de novo review of the law and the evidence.

(Citation omitted.) *Clark v. City of Atlanta*, 322 Ga. App. 151, 152 (744 SE2d 122) (2013).

The procedural history, in pertinent part, is that on September 6, 2013, the Hillmans filed suit against their next-door neighbors, Bord and Bondar, for injunctive relief, nuisance, trespass, negligence, negligence per se, intentional infliction of emotional distress, punitive damages, and attorney fees. The Hillmans alleged that certain actions of Bord and Bondar resulted in increased water runoff on the Hillmans's land, which caused damage to their property. On October 16, 2013, Bord and Bondar answered and counterclaimed for injunctive relief, nuisance, trespass, negligence, negligence per se, tortious interference with business relations, slander and oral defamation,[1] punitive damages, attorney fees and costs of litigation. Bord and Bondar alleged that when the Hillmans constructed a retaining wall, it caused water to back up onto Bord and Bondar's property, which caused damage to the property, including, but not limited to, flooding in their basement.

---

[1] Bord and Bondar later withdrew the tortious interference with business relations and slander and oral defamation claims.

The Hillmans filed a motion for partial summary judgment on all of Bord and Bondar's counterclaims, specifically as these claims relate to the retaining wall. Following oral argument, the trial court granted that motion, finding, inter alia, that the evidence demonstrated no material questions of fact as to whether the retaining wall caused any of the harm alleged.

The facts, viewed most favorably to Bord and Bondar as the non movants, show that the wall built by the Hillmans separates the Hillmans's property from Bord and Bondar's property. Around July 26, 2012, Bord noticed the carpet in her basement was wet after a heavy rain. Upon discovery of the flooding, Bord and Bondar filed an insurance claim. The insurance company sent Richard Grimshaw to investigate the water damage. He determined that the basement flooding was caused by the gathering of water on the outside of the house. In his report to the insurance company, Grimshaw stated that, in his opinion, construction deficiencies caused the water in the basement.

Upon the start of litigation, Bord and Bondar hired an expert hydrologist, George Henry Baltz, III, to determine, among other things, whether the wall caused the flooding in Bord and Bondar's basement. Baltz was told where Grimshaw believed water had entered the basement, and Baltz used that point to calculate the

elevation of water that would occur during storms on the property. Baltz's analysis was not meant to determine exactly where water would stop on the property. Instead, Baltz's calculations determined how much water would pool in a particular cross section of the property.

Baltz plotted the measurements from the property into a hydroflow program to determine the depth of water that would occur on Bord and Bondar's property in a 25-year flood event and a 100-year flood event before and after the wall. Before the wall was built, a 25-year event would cause 0.6 feet of water to pool on Bord and Bondar's land and a 100-year event would cause 0.64 feet of water to pool on Bord and Bondar's land. After the wall was built, a 25-year event would cause 0.74 feet of water to pool and a 100-year event would cause 0.79 feet of water to pool in the same area.

The cross section, on which Baltz based his calculations, was at 937.80 feet above sea level. Using Baltz's results, a 25-year event would cause water in that cross section to rise to 938.54 feet above sea level and a 100-year event would cause water to rise to 938.59 feet above sea level.[2] Since Bord and Bondar's house sits at 939 feet

---

[2] These measurements are based on simple calculations:

A twenty five year event: $937.80 + 0.74 = 938.54$

above sea level , both of these events are still below the grade of Bord and Bondar's house. However, Baltz also testified that the construction of the wall would have changed the way that water was running and pooling between the two houses.

Bord and Bondar supplemented their expert's findings with personal observations. They testified that water has been in their basement two times since the construction of the wall. Further, in Bondar's deposition, he testified that the problem with his property was "that retaining wall that's keeping water on my property and flooding my basement."[3]

The Hillmans hired their own expert hydrologist, Glynn Forrest Groszmann, P.E., to determine how the wall affected water pooling on the two properties. During Groszmann's deposition, he reviewed Baltz's calculations and found that those concerning the 25-year event were "appropriate." However, because 100-year events are normally used in life or death situations, not basement flooding, he felt the measurement was inappropriate in this case. In an affidavit attached to the Hillmans's brief in support of summary judgment, Groszmann stated that in his opinion, the wall

A one hundred year event: $937.80 + 0.79 = 938.59$

[3] In their appellate brief, Bord and Bondar contend that they have also experienced additional erosion, sediment discharges, and flooding issues in their yard. We could not find those facts in the record.

constructed by the Hillmans may have caused a "negligible and insignificant" increase in water concentration in the area.

1. Bord and Bondar contend the trial court erred in concluding as a matter of law that the retaining wall between the two properties was not the cause in fact of any damage to Bord and Bondar's property.[4] We agree.[5]

To recover under a nuisance claim, "[t]he plaintiff must show the existence of the nuisance complained of, that he or she has suffered injury, and that the injury complained of was caused by the alleged nuisance." (Citation and punctuation omitted.) *Rice v. Six Flags Over Georgia, LLC*, 257 Ga. App. 864, 868 (572 SE2d 322) (2002).

> Causation is an essential element of nuisance, trespass, and negligence claims. To establish proximate cause, a plaintiff must show a legally

---

[4] In their first enumeration of error, Bord and Bondar, citing *Ginn v. Morgan*, 225 Ga. 192 (167 SE2d 393) (1969), contend that the trial court erred in basing its grant of partial summary judgment solely on the opinion testimony of expert witnesses. However, we need not reach this issue as there is some evidence of causation, however slight, necessitating a reversal of this grant of partial summary judgment.

[5] We acknowledge that this analysis considers damages not merely related to the house, but the claims as a whole. We do not mean to imply that a grant of partial summary judgment with respect to the damage that the wall allegedly caused to the house would not have been appropriate.

attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.

(Footnote omitted.) *Alexander v. Hulsey Environmental Svcs., Inc.*, 306 Ga. App. 459, 462 (3) (702 SE2d 435) (2010). "The existence of proximate cause is a question of fact for the jury except in palpable, clear, and indisputable cases." (Citation omitted.) *Sprayberry Crossing Partnership v. Phenix Supply Co.*, 274 Ga. App. 364, 365 (1) (617 SE2d 622) (2005).

> In a nuisance action, recovery is authorized for damage to both person and property. *Unlawful interference with the right of the owner to enjoy possession of his property may be an element of damages.* The measure of damages for discomfort, disrupted peace of mind, unhappiness and annoyance caused by a nuisance is for the enlightened conscience of the jury.

(Citations and punctuation omitted; emphasis supplied.) *Woodmen of the World, Unit No. 3 v. Jordan*, 231 Ga. App. 517, 519 (2) (499 SE2d 900) (1998).

For causation, Bord and Bondar submit Baltz's testimony that the wall would have changed the way water flowed and pooled between the two properties. They also present personal observations that the wall is causing an increased amount of water

7

to sit on their property and flood their basement. For damages, in their nuisance claim, Bord and Bondar assert that the wall has interfered with the full use and enjoyment of their property. In addition, they assert that the wall has resulted in "diversion of storm water runoff, eroding soils, and flooding in [their] residence."

The trial court granted summary judgment for all claims related to the retaining wall and found that Bord and Bondar "failed to come forth with evidence creating a question of material fact *as to causation*." (Emphasis supplied.) The court relied heavily on the finding that Bord and Bondar's personal observations alone are "insufficient evidence to raise a question of material fact on the issue of causation." In addition, the trial court found Baltz's calculations, concerning the increase in water pooling on the property after the wall, indicated a lack of causation because the water increase Baltz found was still below the grade of Bord and Bondar's house. Thus, it concluded that Bord and Bondar's counterclaims for nuisance, negligence, and negligence per se as they relate to the retaining wall failed for lack of causation. The trial court further found that Bord and Bondar's claims for punitive damages and attorney fees relating to the retaining wall also failed.

Contrary to the trial court's conclusion, we believe that some evidence exists for causation in Bord and Bondar's counterclaims. "[O]pinion evidence in opposition

8

to a motion for summary judgment can be sufficient to preclude a grant of summary judgment." (Citations omitted.) *Hammond v. City of Warner Robins*, 224 Ga. App. 684, 692 (1) (482 SE2d 422) (1997) (reversing the grant of summary judgment based on expert testimony on the elements of a nuisance claim).

The record includes expert testimony from both sides and personal observations which all indicate the wall caused an increase in water backing up or pooling on Bord and Bondar's property. "Although property must accept the natural runoff of water from neighboring lands, an artificial increase or concentration of water discharge may give rise to a cause of action." *Greenwald v. Kersh*, 265 Ga. App. 196, 197 (1) (593 SE2d 381) (2004). See also *Mallard v. Pye*, 215 Ga. 645, 646 (2) (112 SE2d 620) (1960). Bord and Bondar's expert, Baltz, has calculations demonstrating that the wall caused an increase in the amount of water pooling on the property. Baltz also testified that the wall would have changed the way water runs between the two houses. This testimony is bolstered by Bord and Bondar's personal observations that the wall is causing increased water pooling on their land.[6] Further,

---

[6] Since the expert testimony suggesting causation is sufficient to reverse the trail court's grant of summary judgment, this Court does not consider whether Bord and Bondar's personal observations, standing alone, would be enough to raise an issue of causation. See *Newton's Crest Homeowners' Ass'n v. Camp*, 306 Ga. App. 207, 211-212 (1) (702 SE2d 41) (2010).

9

the Hillmans's expert, Groszmann, testified that the wall caused an increase in water concentration on the property, although he deemed it "negligible and insignificant." However, "[w]hen a surface-water invasion has taken place, whether it amounts to a compensable tort is a question of fact for the jury." (Citation omitted.) *Payne v. Carson*, 215 Ga. App. 253, 254 (1) (450 SE2d 273) (1994).

The trial court's order confused causation with damages. While the water increase caused by the wall was below the grade of Bord and Bondar's house, this fact does not relate to causation. It relates to damages. Since Bord and Bondar are claiming damages beyond the flooding in their basement, such as loss of enjoyment of their land, showing an increase in water on the property at all is sufficient to create evidence of causation.

We conclude that the evidence, when viewed in favor of Bord and Bondar as the non movants, was sufficient to create a jury question as to causation regarding their counterclaims for nuisance, negligence, negligence per se, injunctive relief, punitive damages, and attorney fees. Accordingly, the trial court's grant of partial summary judgment must be reversed.[7]

---

[7] The Hillmans moved for partial summary judgment on all of Bord and Bondar's counterclaims. We note that Bord and Bondar had amended their trespass claim to include the allegation that the Hillmans unlawfully diverted water onto their

2. Bord and Bondar contend that the trial court erred by considering portions of Glynn Groszmann's affidavit that they argue contradicts his deposition testimony. We disagree.

Bord and Bondar argue that contradictory portions of Groszmann's testimony should not be considered by the trial court under *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986) and its progeny. In accord with *Prophecy*, we have held that

> [a]lthough we construe the evidence most favorably to appellant as the party opposing the motion for summary judgment, where there is a direct contradiction in the testimony of the respondent as to a material issue of fact, *that party's* unfavorable testimony will be taken against him.

(Citation omitted; emphasis in original.) *Travick v. Lee*, 278 Ga. App. 823, 826 (630 SE2d 99) (2006). As the emphasized language makes clear, "[t]he *Prophecy* rule applies only to self-contradictions in a party's sworn testimony. It does not apply to. . . non-party witness testimony[.]" (Footnote omitted.) *CSX Transp., Inc. v. Belcher*, 276 Ga. 522, 523 (579 SE2d 737) (2003). Groszmann is a non-party witness. Thus, *Prophecy* does not apply.

---

property. However, the trial court did not address Bord and Bondar's trespass claim in its ruling on the motion for partial summary judgment.

Further, upon review of the record, we find no contradictory portions of Groszmann's testimony. Bord and Bondar's brief cites to Groszmann's deposition testimony where he found Baltz's numbers for the 25-year event after the wall was built to be "appropriate." Then, Bord and Bondar assert that Groszmann contradicted this testimony later when he stated that "even if [Baltz's] calculations were correct, they do not demonstrate that the construction of the Wall has caused any actual hydrological damage to the Bondar/Bord Property." But, this mischaracterizes Groszmann's statements. Groszmann goes on to say, apparently accepting the calculations as true, that they "verify" that the depth of pooled water would not be sufficient to infiltrate Bord and Bondar's basement. Groszmann never stated that he believed Baltz's calculations were incorrect; thus, there is no conflict on this point.

*Judgment reversed. Barnes, P. J., and McMillian, J., concur*.