**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 16, 2025**

# In the Court of Appeals of Georgia

A24A1440. MAB MONROE, LLC v. MAYFIELD SELF ME-064
    STORAGE, LLC.
A24A1441. MAB MONROE2, LLC v. MAYFIELD SELF ME-065
STORAGE, LLC.
A24A1442. MAB AMERICAN DEVELOPMENT PARTNERS, ME-066
LLC v. MAYFIELD SELF STORAGE, LLC.
A24A1443. MAB AMERICAN MANAGEMENT, LLC v. ME-067
MAYFIELD SELF STORAGE, LLC.
A24A1513. MAB MONROE, LLC et al. v. MAYFIELD SELF ME-068
STORAGE, LLC.

MERCIER, Chief Judge.

In these actions regarding an alleged nuisance caused by the increased volume

of water flowing from an uphill property onto a downhill property, MAB Monroe,

LLC, MAB Monroe2, LLC, MAB American Development Partners, LLC, and MAB

American Management, LLC (sometimes collectively referred to as "Appellants")

appeal both the trial court's grant of summary judgment in favor of Mayfield Self

Storage, LLC ("Mayfield") on its nuisance claim as well as the trial court's grant of an injunction requiring Appellants to prevent further water damage. Over the span of five companion cases, Appellants raise an extensive list of enumerated errors, arguing, among other things, that Mayfield never proved that Appellants' actions caused its damages, that the trial court relied on certain inadmissible expert testimony, that the trial court improperly allowed some of Appellants to be added as defendants, and that the trial court lacked jurisdiction to grant an injunction. For the reasons set forth below, we affirm the trial court's grant of summary judgment in favor of Mayfield as it applies to MAB Monroe ("MAB") only, but we must vacate and remand the trial court's grant of summary judgment as it applies to MAB Monroe2 ("MAB2"), MAB American Development, and MAB American Management. In addition, we must vacate the trial court's order issuing an injunction as it applies to all of Appellants, as is more fully discussed below in Division 6.

Case No. A24A1440

1. In this main appeal, MAB contends that the trial court erred by granting summary judgment in favor of Mayfield on its nuisance claim – the central claim upon

2

which all of these cases rest.[1] Specifically, MAB maintains that: (1) the fact that

MAB's development of the uphill property admittedly increased the volume of

stormwater flowing downhill was insufficient to establish that MAB had created a

nuisance; (2) Mayfield's alleged contributory and comparative negligence in designing

and installing damage-control measures to deal with the increased flow of water

precluded summary judgment in Mayfield's favor; (3) the trial court improperly

denied MAB's *Daubert* motions[2] with respect to Mayfield's expert witnesses; and (4)

Mayfield failed to prove that MAB caused the damages to its property, and, in any

event, Mayfield assumed the risk of any damage that did occur. In addition, MAB

maintains that the trial court erred by denying its own motion for summary judgment.

These contentions do not prevail.

It is settled that

[s]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

[1] As we find below in Divisions 3, 4, and 5 that the summary judgment order must be vacated as it applies to the remaining appellants, we only address MAB in this current Division.

[2] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review the grant or denial of a motion for summary judgment de novo, and "we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

*Woodcraft by MacDonald v. Georgia Cas. & Sur. Co.*, 293 Ga. 9, 10 (743 SE2d 373) (2013).

Viewed in this light, the record reveals that, in March 2021, Mayfield purchased a tract of undeveloped property with plans to construct a mini-storage warehouse facility on part of that property. Construction of the initial phase of the storage facility has currently been completed, and the business is operational. At the time of Mayfield's purchase, MAB owned approximately 95 acres of land uphill from Mayfield, where it constructed "Monroe Pavilion," a commercial shopping center.[3] MAB, a subsidiary of MAB American Management, was formed as a single purpose entity to create and hold title to the shopping center.

A strip of property owned by the Georgia Department of Transportation ("GDOT") lies between MAB's property and Mayfield's property. State Highway

---

[3] The site work for Monroe Pavilion was almost complete at the time of Mayfield's purchase.

78 runs through this GDOT property, and several culverts that channel water flowing downhill are located under Highway 78. One of these culverts funnels stormwater flowing down from MAB's property (collected in MAB's largest water detention pond) and the GDOT property directly towards and onto Mayfield's property. Importantly, there is no evidence that the GDOT property has undergone any changes during the time that Monroe Pavillion was developed that would increase the volume of water flowing onto Mayfield's property from GDOT's property.

During the construction of Monroe Pavilion, MAB incorporated water-detention ponds at the front and rear of the property as part of the stormwater management plan. These ponds were intended to manage the increased volume and flow of stormwater resulting from the installation of impervious surfaces such as parking lots.[4] Experts from both parties testified that alterations to the Monroe Pavilion property resulted in an increased *volume* of stormwater flowing from MAB's property downhill towards Mayfield's property, and the trial court found that "[i]t is uncontroverted that the volume of water and sediment coming onto [Mayfield']s property has increased."

---

[4] Specifically, Monroe Pavilion's development resulted in the expansion of the drainage pond in issue from 9.74 acres to 44.84 acres.

Mayfield contends that, once development of its property was underway, it began having problems with the increased water runoff and sediment flowing downhill. To mitigate these problems, Mayfield installed a "diversion" ditch to redirect water around the property. This ditch, however, did not prevent Mayfield from continuing to suffer damage during each heavy rain event.[5]

For this reason, on November 29, 2021, Mayfield filed its initial complaint against MAB and "John Does 1–5," alleging claims of continuing trespass, continuing nuisance, negligence, negligence per se, as well as seeking injunctive relief, punitive damages, and attorney fees. In May 2023, Mayfield filed an amended complaint, naming MAB American Management, MAB American Development, and MAB2 for John Does 1-3, respectively.[6] Mayfield did not seek leave from the court to make this amendment, and it made no motion to substitute or add parties concurrent with the filing.

---

[5] Mayfield spent thousands of dollars to install diversion ditches and water pumps to deal with the water incursion.

[6] Mayfield did not discover the existence of these additional corporate entities until litigation was underway.

On May 19, 2023, Mayfield filed a motion for partial summary judgment, seeking summary judgment on all of its claims except attorney fees and punitive damages. Appellants filed their own motion for summary judgment and *Daubert* motions to exclude testimony from Mayfield's two expert witnesses.[7] After hearings, the trial court granted partial summary judgment in favor of Mayfield, and it also denied Appellants' motions. The trial court found:

> In this case, there is no genuine issue of material fact as to the liability of the [Appellants]. All the experts for [Mayfield] and the [Appellants] agree that there is runoff from the [Appellants'] property onto [Mayfield's] property that is causing damage. The issue in this case is the amount of that damage. The [Appellants] also argue that Highway 78 intervenes and therefore the Georgia Highway Department are partly responsible. That does not relieve the [Appellants] from liability.
>
> Therefore, [Mayfield's] Motion for Partial Summary Judgment on the grounds of Continuing Trespass, Continuing Nuisance, Negligence, Negligence Per Se, and Injunction is granted. The issue of amount of damages and whether there should be Punitive Damages and Attorneys' Fees is reserved for jury trial. The issue as to the terms of the injunction is reserved for hearing by the [c]ourt.

Thereafter, Appellants filed a Notice of Appeal on January 23, 2024, seeking a reversal of the trial court's decision to grant Mayfield's motion for partial summary

---

[7] MAB2, MAB American Development, and MAB American Management also filed motions to dismiss the case against them. These motions are discussed separately below to avoid confusion. See Divisions 3, 4, and 5.

judgment. On January 25, 2024, the trial court, acting sua sponte, scheduled a hearing on an injunction. After this hearing, the trial court issued an order on March 28, 2024, granting an injunction. Appellants contest this injunction ruling as well, and it is discussed later in this opinion in Division 6.

2. With regard to the trial court's grant of Mayfield's motion for summary judgment on the nuisance-related claims, MAB sets forth several arguments that, in practical effect, are contentions that it was not the cause of Mayfield's damages. These arguments, however, are misplaced.

The starting point for our analysis must be the meaning of "nuisance." A nuisance has been statutorily defined as

> *anything* that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man.

OCGA § 41-1-1 (emphasis supplied). In addition, we must consider that

> [c]ausation is an essential element of nuisance, trespass, and negligence claims. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.

*Bord v. Hillman*, 335 Ga. App. 18, 21 (1) (780 SE2d 725) (2015) (citation and punctuation omitted).

Furthermore, and of particular importance to this controversy,

*it has been held that to concentrate and collect surface water and to cause it to be discharged upon the land of a lower proprietor in greater quantities at a particular locality, or in a manner different from that in which the water would be received by the lower estate if it simply ran down upon it from the upper by the law of gravitation, constitutes an actionable nuisance*, and that the continuing maintenance of such a nuisance may be enjoined by a court of equity; but the principle upon which one is charged as a continuing wrongdoer, and therefore subject to be enjoined from the maintenance of a continuing nuisance or trespass, is that he has a legal right and is under a legal duty to terminate the cause of the injury.

*Bodin v. Gill*, 216 Ga. 467, 473 (3) (117 SE2d 325) (1960) (citations omitted and emphasis supplied). See also *Gill v. First Christian Church*, 216 Ga. 454, 454 (1) (117 SE2d 164) (1960) (same).

(a) With these central precepts in mind, we turn to MAB's arguments. MAB begins with the contention that, although its development of uphill property admittedly increased the volume of water flowing onto downhill property, MAB cannot be guilty of creating a nuisance because it reasonably managed the rate (as opposed to the volume) of water flow and it developed its property in accordance with applicable city ordinances. This argument fails for several reasons. First, the statutory

9

definition of nuisance broadly encompasses "anything that causes hurt, inconvenience, or damage to another[.]" OCGA § 41-1-1. By attempting to differentiate damage resulting from the volume of water and the flow rate of water, MAB is making the futile attempt to carve an exception into the all-encompassing term "anything." Second, precedent unequivocally indicates that, by increasing the volume or quantity of water flowing onto a downhill property in an unnatural manner, one may become liable for nuisance, and it is undisputed that MAB's creation of impervious surfaces on its uphill property increased the volume of water flowing downward towards Mayfield's property. *Bodin*, 216 Ga. at 473 (3).[8] And, third, compliance with ordinances during the shopping center's development phase does not immunize MAB from potential liability for creating a nuisance. "[T]he fact that the act done may otherwise be lawful *shall not* keep it from being a nuisance." OCGA § 41-1-1 (emphasis supplied).[9]

---

[8] Without any supporting authority, MAB argues that our Supreme Court did not intend to create this result in *Bodin*. The language of that decision, however, is clear and definitive, and this Court must follow it.

[9] This defeats MAB's argument that it cannot be held liable for nuisance because "flow rates" of water, as opposed to overall volume, are within parameters suggested by certain applicable ordinances.

(b) MAB further contends that, "even under the trial court's misguided approach of holding [Appellants] strictly liable for increased stormwater volume, omitting analysis of Mayfield's fault constitutes error. See *Johns v. Suzuki Motor of Am., Inc.*, 310 Ga. 159, 170 (2020) (finding trial court properly reduced defendant's damages awards based on plaintiff's fault)." In turn, MAB argues that Mayfield's fault lies in the allegedly negligent manner in which Mayfield installed a diversion ditch to mitigate damage from water flowing downhill. But, as summarized in MAB's own parenthetical to *Johns*, 310 Ga. at 170 (5), this argument relates to the *amount of overall damages* suffered by Mayfield, not *causation of damage created by the nuisance comprised of downhill-flowing water*. MAB has done a specific something to Mayfield – it has admittedly increased the volume of water flowing downhill from Monroe Pavillion across the GDOT property and onto Mayfield's property. In turn, that admitted act of increasing the volume of water flowing downhill has directly affected Mayfield's property and its use, creating at least some level of damage. MAB concedes this reality, as it does not contest that Mayfield must employ mitigation methods to deal with the increased flow of water; it only argues that Mayfield negligently installed its diversion methods, thereby contributing to its own harm in

11

some amount. And, although MAB questions Mayfield's choice of mitigation methods, the need to install mitigation ditches and drainage pipes is, at the very least, an inconvenience that is more than "fanciful, or such as would affect only one of fastidious taste." OCGA § 41-1-1.[10] In any event, based on the evidence provided by Mayfield and MAB's own admissions, there is "evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [MAB] was a cause in fact of [at least some party of Mayfield's damages]." *Bord*, 335 Ga. App. at 21 (1). And, in addition, there was an admission by MAB that it did increase the volume of water flowing downhill, thereby *actually* causing the nuisance (as opposed to any particular damages). So, the elements of a nuisance do exist in this case, and the trial court properly granted summary judgment on the issue of creation of a nuisance with regard to MAB, while also reserving the issue of the *extent of the damage* resulting from the nuisance for a jury's consideration. As the trial court stated explicitly in its order: "The issue in this case [that remains] is the amount of . . . damage."[11]

---

[10] This obviates MAB's argument that there was no evidence of "hurt, inconvenience, or damage" to Mayfield *at all*.

[11] In a subsidiary argument, MAB maintains that summary judgment was improper because "Mayfield has no evidence or analysis showing how much of the water coming from the subject culvert is 'MAB water' and how much is 'GDOT

(c) In related arguments, MAB takes further issue with the manner in which Mayfield attempted to mitigate damage caused by the increased volume of downhill flowing water. Specifically, MAB argues that it presented evidence that Mayfield's damages were caused, at least in part, by Mayfield's own contributory negligence due to improper construction of stormwater-maintenance measures. But, again, these considerations go to the amount and nature of the overall damages in this case, not liability for creating the nuisance. It is undisputed that Mayfield did not create the increased volume of water flowing onto its own property. MAB is admittedly responsible for that, and, while the manner in which Mayfield handled the increased water volume caused by MAB may affect or exacerbate the extent and nature of Mayfield's actionable damages, it does not eradicate MAB's liability for causing the increased volume of water flowing downhill and the damages generated by Mayfield's

---

water.'" However, it is uncontroverted that MAB's actions have increased the volume of water across GDOT's property and onto Mayfield's land, and there is no evidence in the current record that GDOT's property has been altered. In any event, MAB's argument again goes to the issue of damages, not liability. MAB can argue at trial that GDOT is responsible for some measure of Mayfield's damages, but, given the evidence of record, MAB cannot maintain that its actions did not cause at least *some* damage to Mayfield's property.

need to take measures to accommodate the increased volume of water flowing onto its property, as more fully discussed directly above.

(d) With regard to evidence presented at the hearing on summary judgment, MAB contends that the trial court erred by denying its *Daubert* motions to exclude the testimony of both of Mayfield's expert witnesses, Dr. Brian Wellington and Chris Adamson.[12] See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993).[13] In short, MAB argues that, if this testimony was

---

[12] Wellington is a hydrology expert, and Adamson is a landscape architect hired by Mayfield to design its site and stormwater system.

[13] Trial courts have broad discretion to admit or exclude expert testimony. *Miller v. Golden Peanut Company*, 317 Ga. 22, 30 (2) (891 SE2d 776) (2023).

> Under OCGA § 24-7-702, it is the role of the trial court to act as a gatekeeper of expert testimony. In this role, the trial court assesses both the witness'[s] qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony. [This is a] rigorous three-part inquiry in which the trial court considers whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993); and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Emory University v. Willcox*, 355 Ga. App. 542, 543 (1) (844 SE2d 889) (2020)

excluded, it would be entitled to summary judgment. We need not reach this issue to affirm the grant of summary judgment, however. Even if we assume that the trial court abused its discretion by denying MAB's *Daubert* motion, MAB was not harmed by this decision, and the grant of summary judgment was still warranted on Mayfield's nuisance claim. MAB's *own experts* testified that MAB increased the volume of water flowing downhill. A MAB expert also testified that Mayfield needed to employ mitigation measures to deal with the flow of water, though she disagreed with Mayfield's chosen method of doing so. Therefore, based solely on the evidence provided by and admitted to by MAB – irrespective of the testimony from Mayfield's experts – the trial court's grant of summary judgment to Mayfield was supported by the undisputed evidence under consideration. See *Bodin*, 216 Ga. at 473 (3).

(citations and punctuation omitted). Pursuant to the *Daubert* standard,

> a trial court must evaluate the reliability of the expert's proffered testimony; proper considerations include whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training.

See *Smith v. State*, 315 Ga. 287, 300 (2) (b) n. 6 (882 SE2d 300) (2022) (punctuation omitted).

(e) Finally, MAB contends that the trial court erred by denying its own motion for summary judgment, arguing that (1) Mayfield cannot show a causal connection between an increase in the volume of stormwater runoff and its alleged damages and (2) Mayfield cannot succeed on its negligence and negligence per se claims, given its assumption of risk in preparing its development plans and the creation of damages by its own conduct. With regard to the first contention, this argument fails for all of the reasons set forth in the discussion above. With regard to the second contention, MAB argues that "Mayfield assumed the risk of injury to its property by negligently failing to account for water discharged from upgradient properties. Mayfield assumed the risks associated with developing its site based on a hydrology plan that omitted consideration of the upgradient properties." MAB provides no relevant caselaw to support this argument, and, in any event, MAB again attempts to convert arguments more appropriate for the question of the amount of overall damages to the question of whether MAB is liable for any damages at all. And, MAB's argument that Mayfield has not proven *any* damages unrelated to its own conduct is not persuasive. As discussed above, the need to install mitigation devices to deal with high volumes of

water flowing from Appellants' property, standing alone, constitutes some form of inconvenience not originating with any action taken by Mayfield.

For all of these reasons, the trial court properly granted summary judgment to Mayfield and against MAB with regard to the creation of a nuisance.

Case Nos. A24A1441, A24A1442, and A24A1443

3. In the following three appeals, MAB2, MAB American Development, and MAB American Management (originally named as "John Doe") contend that they should have never been added as party defendants to this case and that they have no liability for MAB's actions. For these reasons, they maintain on appeal that the trial court should have granted their motions to dismiss. See OCGA § 9-11-12 (b) (2) ("[l]ack of jurisdiction over the person") and OCGA § 9-11-12 (b) (6) ("[f]ailure to state a claim upon which relief can be granted"). They also contend that the grant of summary judgment entered against them was improper, for reasons including the failure of the trial court to conduct discovery on the pertinent issues.

With regard to personal jurisdiction over these defendants, the trial court found:

Under OCGA § 9-10-91 the [c]ourt may exercise personal jurisdiction over a non-resident corporation if it transacts business in this [S]tate,

17

commits tortious acts in this State, or owns, uses, or possesses any real property situated within this State. MAB Monroe 2, LLC, owns the very real estate that is the subject of this case, and the two MAB management companies manage the real estate and are alleged to have committed tortious acts in this State. A Motion to Dismiss this case does not lie on jurisdictional grounds.

With regard to whether Mayfield sufficiently stated a claim against these three defendants, the trial court ruled:

MAB Monroe 2, LLC, is a proper party defendant having taken the property with notice of the action and now having title to the property that is causing the Plaintiff damages. . . . MAB American Management, LLC, and MAB American Development Parties, LLC, are entities that are managing the property that is causing the damage. Each of these MAB companies is, in fact, owned by members of the original Defendant, MAB Monroe, LLC.; although the Management companies have additional members. All these companies are alleged to be involved in the development of the Defendants' land. A Motion to Dismiss does not lie on that ground.

And, with regard to summary judgment, the trial court made no attempt to indicate what acts these three additional defendants performed or failed to perform to make them liable for nuisance. Instead, the trial court simply grouped all of Appellants together, treated them as a single entity with no factual or legal analysis, and held them all liable. All three defendants now appeal, challenging both the

assertion of personal jurisdiction over them and the grant of summary judgment against them.

Case No. A24A1441

4. In this appeal, MAB2 contends that the trial court improperly: (1) allowed Mayfield to add MAB2 as a party by substituting it for an originally named "John Doe" defendant; (2) denied MAB2's motion to dismiss for failure to state a claim because Mayfield failed to allege any facts under which MAB2 could be liable for the alleged torts; and (3) granted summary judgment against MAB2 without allowing it to conduct discovery. Because the trial court, at the present time, has not followed the correct procedure to add MAB2 as a party to this action under OCGA § 9-11-15 (d) and OCGA § 9-11-21, we must vacate its rulings as they relate to MAB2 and remand the case for further consideration of this threshold issue.

In relevant part, the record shows that Mayfield filed its original nuisance action against MAB and "John Doe" defendants on November 29, 2021. Approximately two weeks after Mayfield's original action was filed, MAB2 was incorporated in Delaware on December 14, 2021. Subsequently, on April 7, 2022, MAB transferred a portion of the Monroe Pavilion property to MAB2. Later, in May 2023, Mayfield filed an

amended complaint in which it indicated that it was substituting MAB2 as one of the previously named "John Doe" defendants. Mayfield did not file any motion requesting approval of the addition of MAB2 as a party. Thereafter, MAB2 filed the underlying motion to dismiss, contending, among other things, that, because it was not in existence at the time that the original action was filed, it could not be simply *substituted* for a previously named "John Doe" defendant and, instead, Mayfield was required to file a motion with the trial court to *add* MAB2 as a new party pursuant to OCGA § 9-11-21.[14] Following a hearing, the trial court denied MAB2's motion to dismiss, as quoted above in Division 3, but it failed to address this threshold contention.

As a general matter, "a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction." *Home Depot Supply v. Hunter Mgmt.*, 289 Ga. App. 286 (656 SE2d 898) (2008). Also, it is generally true that, "when a plaintiff seeks to substitute a named defendant for a 'John Doe[,]'"

---

[14] OCGA § 9-11-21 provides:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

a plaintiff need not obtain leave of court to add a party under OCGA § 9-11-21. *Bishop v. Farhat*, 227 Ga. App. 201, 202 (1) (489 SE2d 323) (1997) (emphasis omitted). See also *Troika Entertainment v. Mendez*, 360 Ga. App. 904, 906 (2) (862 SE2d 572) (2021). But, this begs the question in the current case of whether MAB2 could have been named as a "John Doe" in the original complaint so that its substitution for an existing party, as opposed to its addition as a new party, was proper. We find that it was not.

As MAB2 points out in its appellate argument, the purpose of naming a "John Doe" defendant is to leave a placeholder for an existing entity whose identity is unknown at the time that a complaint is filed. See OCGA § 9-11-10 (a) ("A party whose name is not known may be designated by any name; and, when his true name is discovered, the pleading may be amended accordingly.") In other words, "John Doe" is a "fictitious name used in a legal proceeding to designate a person whose identity is unknown, to protect a person's known identity, or to indicate that a true defendant does not exist." Black's Law Dictionary (12th ed. 2024). Based on this understanding of the nature of a "John Doe," MAB2 convincingly maintains that substitution for a John Doe is not a proper method for *adding a new defendant that did*

21

*not even exist at the time the complaint was filed* for claims arising after the suit was initiated. Here, MAB2 simply does not fall into any of the categories that would make it a true "John Doe" defendant.

As a result, Mayfield did not have the authority to make MAB2 a party by simply amending its complaint. Instead, the method by which MAB2 might be joined as a new party to this action is contemplated by OCGA § 9-11-15 (d), which provides:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

In other words,

> [u]nder the Civil Practice Act, different parties, who have not been served, can be added, dropped, or substituted only upon motion and court order. This means that a party, who has never been served and who is not so closely related to a party served as to be an alter ego, and has been mistaken for a real or fictional party, who was served, can only be substituted by amendment and court order in the exercise of the sound discretion of the court. OCGA §§ 9–11–15; 9–11–21[.]

*Foskey v. Vidalia City School*, 258 Ga. App. 298, 302 (c) (574 SE2d 367) (2002). This is because "OCGA § 9–11–15 must be read in pari materia with OCGA § 9–11–21 to

require [a] court order" to "add new parties or drop existing parties." Id. As a "new party," MAB2 was entitled to this procedure.

It does not appear that the proper procedure has been followed by the trial court to add MAB2 as a party to this action. Although OCGA § 9-11-21 states that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just[,]" there is no indication from the trial court's order on the motion to dismiss that it exercised its discretion on this basis. To the contrary, the trial court does not address the addition of MAB2 as a party at all, whether by motion or its own initiative.[15] Because the trial court must properly exercise its discretion to add MAB2 as a party or not, and the trial court has not yet done so, the trial court's rulings on the merits of these actions must be vacated to the extent that they have been made against MAB2.[16] See *Foskey*, 258 Ga.

---

[15] We note that, at a hearing conducted by the trial court regarding the motions to dismiss, Mayfield requested that the trial court use its discretion to add MAB2 as a party, but the trial court never acted on this request.

[16] Contrary to Mayfield's contentions otherwise, this result is not affected by the distinguishable decision in *Good Ol' Days Downtown v. Yancey*, 209 Ga. App. 696 (434 SE2d 740) (1993). In that case, the plaintiff originally filed a tort action against "Good Ol' Days Downtown, Inc.," but it was later discovered that the restaurant in which the tort occurred was owned by "Flower Pot Food Factory, Inc.," a subsidiary of Good Ol' Days. Id. at 697 (1). Both corporations existed at the time

App. at 302 (c). On remand, the trial court is instructed to consider these procedural issues in exercising its discretion to add MAB2 as a party or refuse to do so. See OCGA § 9-11-21; OCGA § 9-11-15 (d).

Case Nos. A24A1442 and A24A1443

---

that the tort claim was originally filed, and both subsequently moved for summary judgment, arguing that the plaintiff never sought leave to add Flower Pot Food Factory as a party pursuant to OCGA § 9-11-21. Id. The trial court denied the motion, and this Court affirmed on appeal, explaining that the trial court implicitly approved the plaintiff's amendment with its denial of summary judgment. We reasoned that Flower Pot Food Factory was served without inexcusable delay, was not prejudiced in maintaining its defenses on the merits, and it "should have known" it was the proper defendant. Id.

The current matter is distinguishable on several bases. First, both corporations were not in existence at the time that the original complaint was filed. Second, the trial court's order evinces a belief that MAB2's subsequent ownership of part of the subject property alone was sufficient to make it a party to the action, irrespective of any procedural hurdles. And, third, in this case at its current posture, there is not an extensive record showing MAB2's activity on and with the property. While Mayfield attempts to fill these holes in the record with allegations that MAB2 is simply part of a corporate "shell game" designed to avoid liability for creation of the nuisance, these contentions are mere suppositions at this point. Discovery might eventually bear these claims out, but that discovery has not yet occurred. See *General Motors v. Buchanan*, 313 Ga. 811, 814 (2) (a) (874 SE2d 52) (2022) (under the Civil Practice Act, discovery is broad and should "be construed liberally in favor of supplying a party with facts.") (citation and punctuation omitted); *Studenic v. Birk*, 260 Ga. App. 364, 367 (579 SE2d 788) (1) (2003) ("[T]rial courts must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment.") (citation and punctuation omitted).

24

5. In these almost identical appeals, MAB American Development and MAB American Management (collectively the "MAB Managers") argue that they should have never been made parties to the underlying nuisance action. Specifically, they contend that the trial court erred by: (1) denying their motions to dismiss due to a lack of personal jurisdiction under Georgia's long arm statute; (2) holding that they were liable for an alleged tort committed by MAB when they are only related to MAB as its managers and have no direct ownership interest in the Monroe Pavillion property; and (3) holding that they were derivatively liable for MAB's conduct.

As the record currently stands, evidence is extremely limited as to the nature and actual functioning of the MAB Managers with regard to their oversight of MAB and their involvement with the nuisance in question. It appears that these entities have certain management roles over some of the organizations subject to this litigation. For example, there is evidence that MAB American Development manages MAB, and MAB American Management manages MAB and MAB American Development. But there is almost no evidence as to what these management duties specifically entail. It is also known that a majority of the members of the MAB Mangers are also members

of MAB.[17] Finally, the record indicates that the MAB Managers are Delaware corporations with no place of business in the State of Georgia.

With regard to the trial court's ruling on their motion to dismiss, the MAB Managers first contend that the trial court erred in its determination that it had personal jurisdiction over them pursuant to Georgia's long arm statute. For the reasons set forth below, we find that the trial court employed the wrong evidentiary standard when considering this issue, and, as a result, we must vacate the finding on personal jurisdiction and remand the case for further consideration.

It is axiomatic that, "[d]uring a hearing on the determination of jurisdiction, in personam jurisdiction must be proven by a preponderance of the *evidence*." *Carter v. Heritage Corner*, 320 Ga. App. 828, 830 (2) (b) (741 SE2d 182) (2013) (citation and punctuation omitted; emphasis supplied). And "[a] defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction."

---

[17] The members of MAB American Development are Cary Uretz, Nicholas Gray, and David Rosenthal. MAB American Development is managed by a board consisting of the same three individuals. The members of MAB American Management are Uretz, Gray, Rosenthal, and John Argo. MAB American Management is governed by a board consisting of the same four individuals. The members of MAB are Uretz, Gray, Rosenthal, Argo, and Publix Party Limited, an Australian Limited Liability Company,.

*Intercontinental Svcs. of Delaware v. Kent*, 343 Ga. App. 567, 568 (807 SE2d 485) (2017) (citation and punctuation omitted). Unlike a motion to dismiss for failure to state a claim which is adjudicated based on the allegations in pleadings, see, e. g., *Zephaniah v. Georgia Clinic*, 350 Ga. App. 408, 410 (829 SE2d 448) (2019) (noting that in reviewing a motion to dismiss for failure to state a claim, we construe the pleadings in the light most favorable to the plaintiff ), a motion to dismiss for lack of personal jurisdiction must be adjudicated based on evidence placed before the court. *Carter*, 320 Ga. App. at 830-831 (2) (b). In short, then, determination of personal jurisdiction requires a consideration of evidence.

Furthermore, when considering whether out-of-state entities like the MAB Managers have subjected themselves to personal jurisdiction, the evidence must show that they have minimum contacts with Georgia under OCGA § 9-10-91, the long arm statute.

In relevant part, OCGA § 9-10-91 provides:

A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(4) Owns, uses, or possesses any real property situated within this state[.]

More succinctly stated, the long arm statute "requires that an out-of-state defendant must do certain acts within the State of Georgia before [it] can be subjected to personal jurisdiction. Where . . . it is shown that no such acts were committed, there is no jurisdiction." *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513) (1987). See also, *Innovative Clinical & Consulting Svcs. v. First Nat. Bank of Ames*, 279 Ga. 672, 673 (620 SE2d 352) (2005).

In summary form, the long arm statute requires the production of *evidence* that an entity engaged in certain acts within Georgia in order to trigger personal jurisdiction. Here, however, the trial court indicated in its order that it had personal jurisdiction over the MAB Managers because they "manage the real estate and are alleged to have committed tortious acts in this State." This ruling is problematic, as

it expressly shows that, in making a decision regarding personal jurisdiction, the trial court factored *allegations* into its ruling. But allegations are not evidence, and they should not be used to make a determination of personal jurisdiction. *Carter*, 320 Ga. App. at 830-831 (2) (b). So, the trial court applied the wrong standard in reaching its decision on personal jurisdiction over the MAB Managers. As such, we must vacate the trial court's decision regarding its personal jurisdiction over the MAB Managers and remand this case for application of the appropriate standard.[18]

---

[18] We note that, in the opening of its brief regarding MAB American Development, Mayfield states:

> This appeal boils down to a one, simple question: whether the Appellant MAB American Development Partners LLC ("MAB Development") is liable to Appellee Mayfield Self Storage, LLC ("Mayfield") by virtue of the fact that it shares a common nucleus of decision making with MAB Monroe ("MAB"), participated in development activities, and ratified the conduct of MAB.

And, in the opening of its brief regarding MAB American Management, Mayfield summarizes:

> This appeal boils down to one simple question: whether the Appellant MAB American Management, LLC ("MAB American or Appellant") is liable by virtue of the fact that it shares a common nucleus of decision-making with MAB Monroe, LLC ("MAB" or "MAB Monroe"), ratified the conduct of MAB Monroe, and approved designs and plans for the property causing harm[.]

6. In this related appeal, Appellants maintain that the trial court erred by imposing an injunction against them, contending that: (1) the trial court lacked jurisdiction to grant injunctive relief while the merits of the underlying summary judgment order was on appeal; (2) the trial court erred by sua sponte entering the injunction without allowing the parties to fully brief the issues; (3) the terms of the granted injunctive relief improperly alter the status quo rather than preserving it; (4) Mayfield failed to prove the elements required for the grant of a preliminary injunction; and (5) the trial court erred by entering overreaching and unreasonable injunctive relief compelling Appellants to undertake affirmative actions on property Appellants no longer own.[19]

In its March 28, 2024 order on injunctive relief, the trial court held:

---

These characterizations underscore the problematic state of the current record. Although Mayfield's allegations that MAB and its related limited liability companies have played a corporate shell game to avoid liability may ultimately be proven once full discovery regarding these allegations has played out, at this stage in the litigation, these conclusory statements are allegations only. And, as such, they support neither Mayfield's wide-ranging contentions of wrongdoing nor the trial court's order on summary judgment.

[19] The record indicates that a portion of the property has now been sold to another corporation named Shaked 29, LLC.

It is clear that [Mayfield] is suffering harm. All the experts agree that there is an increased flow of water and sediment onto [Mayfield's] land. The issue is how much and what is the damage. However, the issue of damages is not before the Court at this time. . . . The only evidence is that the amount of damage and sediment increases with every rain event, and there is no evidence that rain will suddenly cease to fall. [Mayfield] has incurred massive damage in this case. . . . [Appellants] can, however, remedy the problem on a temporary basis. The evidence shows that there is a pump and diversion method that can be used to keep the water and sediment runoff from [Mayfield's] property. This will not disserve the public interest. . . . Therefore, IT IS HEREBY ORDERED that . . . MAB Monroe, LLC, MAB Monroe 2, LLC, MAB American Development Partners, LLC, MAB American Management, LLC are hereby enjoined from discharging stormwater and sediment onto Plaintiff, Mayfield Self Storage LLC., in any way including from their detention pond in Pond A. [Appellants] shall implement measures within thirty (30) days of the date of this order to seal off the outlet control structure and redirect all water away from [Mayfield's] property, whether by directing the water from Pond A to Pond B or to any other discharge point, so that the water does not run over [Mayfield's] property. This is a temporary injunction, and [Appellants] shall implement it within thirty (30) days.

(a) As an initial matter, we note that, even if the injunction had otherwise been properly entered, the order would necessarily have to be vacated with regard to MAB2 and the MAB Managers, in light of our decisions in Divisions 3, 4, and 5. But, in any event (and as more fully discussed immediately below), the trial court lacked jurisdiction to enter the injunction against any of Appellants at the time that the order was entered.

31

(b) Appellants contend that, because a notice of appeal from the order granting summary judgment to Mayfield had already been filed prior to any decision on the nature of the injunctive relief, the trial court was divested of jurisdiction to grant the motion for an injunction when it did.[20] We agree.

OCGA § 5-6-46 (a) provides: "In civil cases, the notice of appeal . . . shall serve as supersedeas upon payment of all costs in the trial court by the appellant . . . ."[21] And, with regard to the effect of supersedeas on prospective injunctive relief, OCGA § 9-11-62 (a) states: "Unless otherwise ordered by the court, an interlocutory or final judgment in an action for an injunction . . . shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal." OCGA § 9-11-62 (c) further states:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the

---

[20] The notice of appeal relating to the summary judgment order was filed on January 23, 2024, and the injunction order was entered on March 28, 2024.

[21] Generally, a "notice of appeal supersedes only the judgment appealed; it does not deprive the trial court of jurisdiction as to other matters in the same case not affecting the judgment on appeal." *Johnson v. Randolph County*, 301 Ga. App. 265, 266 (1) (687 SE2d 223) (2009) (citation and punctuation omitted). But, as discussed above, this case does not fall under this most general rule.

pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Given these statutory provisions, the pivotal issue that must be answered to determine whether the trial court retained jurisdiction in this case to provide injunctive relief while the appeal of the summary judgment order was pending is whether the trial court initially granted an injunction *within* the framework of its summary judgment order. At first glance, it would appear that the trial court could have intended to do so, as the order on summary judgment does at least purport to grant an injunction in its recital. But closer inspection of that order and the subsequent injunction order, itself, shows on the face of the record that this was *not* the actual intention of the trial court.

The summary judgment order recognizes: "[In] *Bodin v Gill*, 216 Ga. 467, [t]he Court stated that where there is a continuing nuisance a restraining order and injunction would be appropriate." But, in its closing remark, the trial court states: "The issue as to the terms of the injunction is reserved for hearing by the [c]ourt." In other words, the trial court was not actually prepared to grant injunctive relief at the time that it entered its order on summary judgment. In the subsequent orders setting the injunction hearing and granting the injunction, the trial court verifies this

interpretation. The order setting the hearing mandates: "The above styled case is set for hearing on March 8 2024 at 9:00 a.m. on *the question of the issuance* of a Temporary Injunction." (Emphasis supplied.) And, the injunction order states that a "ruling on the issue of a temporary injunction and the terms thereof" had previously been reserved for a later hearing. In other words, the trial court *had not actually made a decision* whether to grant an injunction at the time that the summary judgment order was entered. Both the decision to grant an injunction and the potential terms of such a theoretical injunction were deferred to a future date.

Under these circumstances, Case No. A24A1440 (the summary judgment appeal) cannot be considered an appeal from an order granting, dissolving, or denying an injunction. See OCGA § 9-11-62 (c). Instead, it is an appeal from an order deciding summary judgment motions but *completely reserving for a future date* the issue of granting an injunction and deciding what terms it might have. Given this classification of the summary judgment appeal, the trial court did not have the jurisdiction to consider and act on Mayfield's injunction motion during the pendency of that summary judgment appeal. See OCGA § 5-6-46 (a). Accordingly, the trial court was divested of jurisdiction to enter an injunction after Appellants filed their notice of

34

appeal in the summary judgment action,[22] and the order granting the injunction must therefore be vacated.

*Judgment affirmed in Case No. A24A1440. Judgments vacated and remanded with direction in Case Nos. A24A1441, A24A1442, and A24A1443. Judgment vacated in A24A1513. McFadden, P.J., and Rickman, J. concur.*

---

[22] *Pullen v. Johnson*, 173 Ga. 581 (160 SE 785) (1931), the sole case upon which the trial court premised its power to grant a temporary injunction while the appeal of the summary judgment order was pending, does not alter this result. In *Pullen*, a husband died intestate, and his real property was set aside for his surviving widow as a "year's support" in accordance with a prior version of our Probate Code. Other relatives attempted to caveat the handling of the estate, and, after their caveats were rejected, the caveators filed an appeal. During the pendency of this appeal, the trial court issued an interlocutory injunction to stop the caveators from interfering with the year's-support property in any way. The caveators contended, among other things, that the appeal regarding the denial of their caveats divested the trial court of jurisdiction to enter the injunction. Our Supreme Court, however, found that the interlocutory injunction was appropriately granted based on the specific wording and intent behind the statutory year's support allowance. In essence, the *Pullen* Court determined that the appeal of a rejected caveat to the distribution of an estate did not prevent the trial court from granting a temporary injunction regarding real property set aside for a year's allowance because that property, under the former probate statute, "shall not be administered as the estate of the deceased husband or father." Therefore, the appeal regarding the administration of the estate did not include the statutorily-reserved property. None of this has any relation to the current matter. Because *Pullen* was narrowly based upon the interpretation of the former Probate Code, it is wholly distinguishable.